J. C. McCASKILL v. McKAY McKINNON.

(Decided November 14, 1899).

*Homestead—Reallotment—Act 1893, Chap. 149—Equitable Action, When Proper.*

1. If it appears, upon a reallotment of homestead, that the value thereof has increased, it is immaterial in point of law, whether the increase had come in the market value or in the intrisic value, the effect is the same—the homestead is not to exceed in value the sum of $1,000.

2. If the increase is 50 per cent, or more, the statute of 1893, chap. 149, enables the creditor to have a reallotment, in a proceeding before the Clerk, in aid of an execution in the sheriff's hands. If the increase is less than 50 per cent, the judgment creditor can proceed by suit in the nature of an equitable action, to subject the excess to his debt. *Vanstory v. Thornton*, 110 N. C., 10.

3. Where a portion of the land included in the allotment was subject to a mortgage prior thereto, and has since been sold thereunder, in making the reallotment it must clearly appear that this portion was not included in the revaluation.

4. The real and only matter before the Clerk under the Act of 1893, is, whether or not the homestead of defendant has appreciated in value as much as 50 per cent since the original allotment.

5. *Semble*, in the allotment of homestead the appraisers properly estimated the value of the interest of the homestead in the land, taking into consideration certain encumbrances upon it, and assigned to him his *interest* in the land, and not the *corpus* itself.

PROCEEDING for reallotment of homestead of defendant, before the Clerk, under Act of 1893, chap. 149, upon alleged increase of 50 per cent in value since last allotment, heard upon affidavits, and from his decision in favor of plaintiff there was an appeal by defendant to the Judge, which was tried before *Timberlake, J.,* at September Term, 1899, of the Superior Court of RICHMOND County, who rendered the following judgment:

McCaskill *v.* McKinnon.

This cause coming on to be heard, and being heard by consent of all the parties at September Term, 1899, of the Superior Court of Richmond County, Hon. E. W. Timberlake, Judge presiding, after hearing all the evidence submitted by the parties, and the argument of the counsel, the Court doth find and adjudge as follows:

1. That all the findings of facts found by the Clerk of the Superior Court be stricken out except that one which declares that the homestead of the defendant, McKay McKinnon, allotted in 1877, has probably appreciated in value 50 per centum or more since the said allotment, and as to that the decision of the Clerk is hereby affirmed.

2. That all of the objections and exceptions filed by the defendant are hereby disallowed and set aside.

3. That in the opinion of the Court the said homestead of the defendant has probably appreciated in value 50 per centum since the last allotment.

4. That the order of the Clerk adjudging a reallotment of the homestead be and the same is hereby affirmed.

5. The Court doth further order and adjudge that the sheriff be and he is hereby directed to allot the judgment debtor his homestead in the same manner as if no homestead had been allotted.

6. That the plaintiff recover of the defendant the costs incurred in this proceeding.

E. W. Timberlake,
*Judge Presiding.*

Defendant excepts to Judge overruling his exceptions to Clerk's judgment; also to striking out finding of facts by Clerk; also to his finding that the homestead has increased in value 50 per cent, and ordering reallotment. Exceptions overruled.

From this judgment the defendant appeals to the Supreme Court.

*Messrs. John D. Shaw & Son,* for appellant.
*Mr. J. H. Cook,* for appellee.

MONTGOMERY, J.   This proceeding was begun under the provisions of chap. 149 of the Laws of 1893, to have a reallotment of defendant's homestead, because of its alleged increase in value of 50 per centum since the last allotment thereof.   It would appear from a reading of the original homestead allotment that the appraisers did not allot the homestead in the *corpus* of the land, but that they estimated the value of the interest of the homesteader in the land, taking into consideration certain encumbrances upon it and assigned to him "his interest in" the land.   It further appeared that in the partition of the land of Daniel McKinnon, father of the defendant, lot No. 1, the same tract the interest in which the appraisers allotted to the hometseader, the defendant, fell to the share of the defendant, valued at $4,000 and charged with the payment of $2,000 in favor of other shares for equality of partition, and upon 80 acres of which there was at the time of the allotment a mortgage of $900. The appraisers valued the interest of the homesteader at $600.   Taking all of these facts together it would seem to be clear, if nothing else appeared, that the land itself was not allotted to the defendant as a homestead, but only his interest in the same, considering the encumbrances.   But it is to be seen further, from the affidavits of two of the appraisers, that they allotted the whole 300 acres as a homestead although the same had been valued in the partition proceedings at $4,000. Those inconsistencies produce troublesome complications, and while a statement of them might have been left out, yet they will serve to explain more clearly the matters to be discussed in the consideration of the questions involved in this case. The application of the plaintiff, a creditor of the defendant

McCaskill *v.* McKinnon.

by judgment—executions on which had been issued and was in the hands of the sheriff when the proceedings were commenced—was heard by the Clerk upon numerous affidavits filed by both plaintiff and defendant as to the value of the homestead. The Clerk made numerous findings, nearly all of which the defendant excepted to, and all of which his Honor struck out except the one which declared that the homestead of the defendant had probably appreciated in value 50 per centum or more since the last allotment, and that finding his Honor affirmed.

All of the exceptions and objections filed by the defendant were disallowed and refused, and the order of the Clerk ordering a reallotment of the homestead affirmed, the sheriff being instructed to have the allotment made in the same manner as if no homestead had ever been allotted. The defendant excepted to the judgment rendered by his Honor, especially because his Honor struck out the findings by the Clerk Nos. 9, 10 and 11, which in substance were (No. 9), that the defendant—homesteader—had done nothing in the way of improving the land or in making additions to the buildings by which the homestead was appreciated in value, but that the homestead was increased in value because the town of Maxton, 2 miles distant, had been built up and improved, and that by the building up and improvement of the town, the surrounding territory, including the homestead, had increased in value 50 per centum; (No. 10), that the homestead had increased in value 50 per centum, and (No. 11), that in estimating the value of the homestead he (the Clerk) did not consider the value of the 80-acre tract, upon which there was a mortgage of $900 when the homestead was allotted, and which had been sold before this proceeding was begun.

The real and only matter before the Clerk was whether or not the homestead of the defendant had appreciated in value

as much as 50 per cent since its allotment in 1877. · It appeared on the hearing before the Clerk that 80 acres of the homestead lying nearest to the town of Maxton had been sold under a mortgage executed prior to the time of the allotment of the homestead. And it appeared from all the testimony on that point in the affidavits filed by the plaintiffs that the increased value of the homestead was due not to improvements in the quality of the land or upon the buildings, but only because the town of Maxton had been built up and greatly improved after the allotment of the homestead, by means of which the market value of the surrounding lands was increased. To determine, therefore, the value of the homestead at the time of the hearing, it was necessary to find the value of what was left after the sale of 80 acres of it under the mortgage, for a resident debtor at all times, under the Constitution and laws, is entitled to have exempted from execution a homestead of the value of $1,000.

The Clerk made a finding, as we have seen, that he did not consider the value of the 80-acre tract which had been sold under the mortgage in estimating the value of the homestead, but upon a painstaking examination of the whole record it appears that that finding was made without any evidence whatever to support it. We have carefully examined each and all of the affidavits, and there is nothing in either of them which puts directly or indirectly any valuation upon that part of the homestead remaining after the sale of the 80 acres under the mortgage, or upon the value of the 80 acres separately. The affidavits each and all tend to prove the value of the lands allotted as a homestead to the defendant in 1877, that is the value of the whole including the 80 acres. The finding of the Clerk on that point having been made without evidence to support it, it follows therefore that his Honor was in error in affirming that finding of the Clerk.

McCASKILL *v.* McKINNON.

All the other findings of the Clerk not connected with the alleged increased value of the original homestead, less 80 acres sold under the mortgage, at the time of its allotment, and at the time of the hearing, was irrelevant in the view of showing the percentage of increase, if any, and there was no error in his Honor's striking them out. Especially was the defendant not prejudiced by the striking out of the finding number 9 by the Clerk, for it is totally immaterial if the homestead has been increased in value 50 per cent since the allotment whether that increase had been effected through the money and labor of the defendant by improvements upon the land and buildings, or by improved conditions growing out of the building up of a town in close proximity to the homestead. It is immaterial in point of law whether the increase had come in the market value or in the intrinsic value. In either event the effect is the same. The language and the meaning of the Constitution is perfectly clear that a debtor of this State who takes advantage of the homestead provision can only have the advantage of a homestead of the value of $1,000. If the increase is less than 50 per cent the creditors can proceed in the nature of an equitable action to subject the excess to their debts. *Vanstory v. Thornton,* 110 N. C., 10. If the increase should be 50 per cent or more, the statute of 1893, which we have referred to, enables a creditor to have a reallotment.

There was error in the ruling of his Honor in the particulars set out in the opinion.

Error.