**Frank K. GILROY, Plaintiff,**

v.

**Peter M. LOWE and Martha Lowe, his wife, et al., Defendants and Appellants,**

**Wendell L. Butcher et al., Defendants and Respondents.**

**No. 16764.**

Supreme Court of Utah.

Feb. 19, 1981.

**25.** Id. at 1016.

Richard J. Leedy, Salt Lake City, for defendants and appellants.

Earl D. Tanner & Associates, J. Thomas Bowen, Salt Lake City, for defendants and respondents.

HOWE, Justice:

This appeal challenges an execution sale based on a judgment rendered in favor of cross-plaintiffs Wendell L. and Irene B. Butcher and against cross-defendants and appellants Peter M. Lowe and Martha Lowe, his wife, in the amount of $309,-479.90. Appellants contend that the execution sale should have been set aside because (1) the limitations period had expired at the

time of the sale; (2) the filing and service of a declaration of homestead exempted appellants' home from a sheriff's sale to satisfy the judgment; and (3) the execution sale was void because it was instituted at the behest of an assignee of only a portion of the judgment.[1]

■ Rule 69(a), Utah Rules of Civil Procedure, provides that a writ of execution may issue at any time within eight years after the entry of judgment. In this case the judgment was rendered on October 22, 1971, and the execution sale took place on Monday, October 22, 1979. Appellants characterize the time period between the two events as eight years and one day. They contend that the judgment lien was extinguished on October 21, and that the execution sale on the following day was, therefore, invalid. We disagree. The method of computing time periods relating to acts provided for by law is set out in Rule 6(a), Utah Rules of Civil Procedure, and §§ 68–3–7 and 8, U.C.A. 1953, as amended. When the time period is measured in months or years from a certain date, the day from which the time period is to run is excluded and the same calendar date of the final month or year is included. See *Albrecht v. Uranium Services, Inc.*, Utah, 596 P.2d 1025 (1979). Furthermore, even if the limitations period expired on October 21, 1979, that date was a Sunday, and the time period extended until the end of the next day. See *Nelson v. Jorgenson*, 66 Utah 360, 242 P. 945 (1926). The execution sale on October 22, 1979, was timely, as was properly found by the trial court.

The second issue raised by appellants is that the sheriff was prohibited from carrying out the execution sale because appellants had filed and served a declaration of homestead prior to the sale. A homestead right is mandated by Article XXII, § 1, Utah Constitution,[2] and further provided for by §§ 28–1–1 *et seq.*, U.C.A.[3] As appellants view the homestead exemption in light of its underlying policy, it is a complete bar to execution on a person's home regardless of its value or the amount of equity the judgment debtor owns in the home. This interpretation, however, would render meaningless the monetary limitations established by the Legislature to define the homestead exemption.

■ The appellants in the present case are entitled by statute to a homestead exemption in the amount of $8,000, based on the legislative provision for $6,000 for the head of the family and $2,000 for the spouse. In their declaration of homestead appellants stated the value of their home to be $45,000, less the unpaid first trust deed of approximately $11,000, for a net value of $34,000. The appellants' interest in the home, therefore, exceeded in value the amount of the homestead exemption. A sale is not prohibited in these circumstances, but only when "the bid does not exceed the value of the exemption, when the homestead is in one piece." § 28–1–15, U.C.A.[4]

The principle that a homestead property may be sold when its cash value exceeds the exemption has previously been recognized by this Court. In *Payson Exchange Savings Bank v. Tietjen*, 63 Utah 321, 225 P.

1. Although appellants raise additional issues in their reply brief, these issues were not presented to the District Court and will not be considered for the first time on appeal.

2. Article XXII, § 1 states: The Legislature shall provide by law, for the selection by each head of a family, an exemption of a homestead, which may consist of one or more parcels of land, together with the appurtenances and improvements thereon of the value of at least fifteen hundred dollars, from sale on execution.

3. § 28–1–1 provides: A homestead consisting of lands, appurtenances and improvements, which lands may be in one or more localities,

not exceeding in value with the appurtenances and improvements thereon the sum of $6,000 for the head of the family, and the further sum of $2,000 for the spouse ... shall be exempt from judgment lien and from execution or forced sale.

4. The inflationary increase in housing values in recent years obviously dilutes the real protection afforded a homeowner by the statutorily-set dollar value of the homestead exemption. It is for the Legislature, however, and not for this Court to determine the need for policy implementation through changes in the law.

598 (1924), this Court stated that when a claim of homestead is made a judgment creditor is entitled to any excess above the value constituting the homestead right. See also *Ostler Land & Livestock Co. v. Brough*, 111 Utah 336, 178 P.2d 911 (1947); *Giesy-Walker v. Briggs*, 49 Utah 205, 162 P. 876 (1916). Cases cited by appellants deal primarily with situations in which the amount of the homestead exemption exceeded the value of the property and the levy of execution of a homestead was found to be void. See, e. g., *Panagopulos v. Manning*, 93 Utah 198, 69 P.2d 614 (1937). Such cases are not controlling here.

The homestead exemption is not a bar to execution in the present case. Assignee Federal Leasing, Inc., bid in $100,000 of the judgment against appellants and paid to the sheriff on behalf of appellants $8,000, the amount representing appellants' homestead exemption. The trial court ruled correctly that appellants were not entitled to claim the protection of the homestead exemption to set aside the execution sale.

■ Appellants' final point is that Federal Leasing, Inc.,[5] which was the assignee of a portion of the judgment against appellants, was not entitled to have execution issued in this action. This issue was presented to the trial court in appellants' motion to set aside the execution sale, dated October 30, 1979, as follows:

This motion is made on the [ground] that . . . Federal Leasing, Inc., the purported assignee of Butcher's judgment is not, in fact, an assignee of Butcher's judgment . . . .

The record, however, contains a document entitled "Partial Assignment of Judgment," dated August 31, 1979, and signed by Wendell L. Butcher, assigning to Federal Leasing $100,000 of the judgment against appellants and "all sums of money up to $100,000

that may be obtained by means thereof, or in or as a result of any proceedings had thereon." Federal Leasing was also given power of attorney "to use all lawful means for the recovery of the aforesaid money due . . . ." A copy of the assignment was presented to the sheriff at the time of the execution sale, as stated in the affidavit of J. Thomas Bowen, attorney for Federal Leasing and Wendell L. Butcher, dated October 31, 1979. A copy of the affidavit was mailed to counsel for appellants on October 31, 1979, several days prior to the hearing on appellants' motion on November 9. The record provides ample support for the finding that an assignment was made from judgment creditor Butcher to Federal Leasing.

■ Appellants challenge the propriety of execution issuing at the direction of a "stranger or interloper to an action," but they cite no authority on this point. It is beyond question that ordinarily property or contract rights may be transferred to an assignee. A judgment may be assigned to someone who was not a party to the initial action, and the assignee receives the right to enforce such a judgment. See 46 Am. Jur.2d *Judgments* § 883 (1969); 49 C.J.S. *Judgments* § 522(b) (1947).

Appellants further challenge the partial assignment[6] as being invalid for being contrary to the "general rule" stated in 49 C.J.S. *Judgments* § 520 (1947) as follows:

As a general rule a partial assignment of a judgment, while valid as between the parties, is of no effect against the judgment debtor unless he consents thereto or ratifies it.

This statement is grounded on several legitimate policy considerations. A debtor should not be subject to the annoyance or harassment of collection efforts by diverse and numerous creditors holding assignments of fractions of a single judgment.

5. Federal Leasing, Inc., is identified in respondents' brief as a corporation created as a result of the divorce of Wendell and Irene B. Butcher. It holds property in trust for their benefit.

6. The record does not disclose whether in the trial court the defendant raised the specific issue of the validity of an assignment of only a

portion of a judgment. Although we recognize the soundness of the rule that issues may not be raised for the first time on appeal, the assignment in this case was challenged by appellants in the court below, and we therefore address the partial assignment question.

Nor should a judgment debtor be subject to further liability to an assignee when he has without notice of the partial assignment satisfied his obligation to the judgment creditor either by full payment or by payment of a lesser stipulated amount. A "secret" partial assignment may be unenforceable also in situations where it would adversely affect a third-party purchaser of property on which a judgment lien existed.

This Court has not ruled on the validity of a partial assignment of a judgment and whether an assignee of a portion can properly direct the sheriff to execute on the debtor's property. An early Indiana case upheld an oral partial assignment and an execution issued thereon, *Wood v. Wallace*, 24 Ind. 226 (1865), and in *Madison & Pennings, Inc. v. Foundation Engineering Co.*, Tex.Civ.App., 390 S.W.2d 48 (1965), the court recognized that it was permissible to transfer only an interest in a judgment, citing *Great American Indemnity v. McMenamin*, Tex.Civ.App., 134 S.W.2d 734 (1939). In the instant case, the judgment debtor had not paid any portion of the sizeable judgment against him and had not been subjected to collection efforts by the original judgment creditor. Any amounts recovered by the assignee, Federal Leasing, apparently inured to the benefit of the assignor. There is no claim of prejudice to appellants resulting from the partial assignment or from the execution sale based on the assignment.

None of the reasons usually advanced for not recognizing partial assignments are here present, and we hold that under the facts of this case, the partial assignment and execution sale held thereunder are valid.

Affirmed. Costs to Respondents.

MAUGHAN, C. J., and HALL, STEWART and CROCKETT,* JJ., concur.