ARNOLD, Circuit Judge.
 

 Appellants Larry Allen Garrison and Jennifer Jan Garrison appeal from the order of
 
 *501
 
 the District Court,
 
 [1]
 
 April
 
 1,
 
 1986, affirming the October 11, 1985 order of the Bankruptcy Court
 
 [2]
 
 holding that the Great Southwest Insurance Company had subro-gation rights to a mortgage held by The National Bank of Arkansas in property owned by the Garrisons. Both courts below held that the subrogation rights arose through a valid partial assignment of a foreclosure judgment from the Bank to the insurance company. For reversal, the appellants rely in the main on the general rule of law that a partial assignment of a judgment is not enforceable against the judgment debtor without the debtor’s consent or ratification. We agree with the courts below that the general rule does not apply in the circumstances of this case and therefore affirm the District Court.
 

 In brief, the facts of the case are as follows: The Garrisons executed promissory notes to the Bank, secured in part by a mortgage on the premises of the White Water Tavern, a restaurant and drinking establishment in Little Rock, Arkansas, owned by the Garrisons. The terms of the note required the Garrisons to insure the mortgaged premises against fire. The Garrisons defaulted on the notes, and in May 1983 the Bank foreclosed on the mortgage and obtained a judgment in state court. Before the property could be sold to satisfy the Bank’s judgment, the Garrisons filed their Chapter 11 bankruptcy petition, listing the Bank as a secured creditor in the amount of $56,000. Subsequently, the Garrisons allowed the fire insurance policy on the premises to lapse for nonpayment of premiums. The Bank took out fire insurance with Great Southwest on its interest in the property. At some point, the Garrisons obtained another insurance policy on their interest. Neither the Garrisons nor the Bank informed the other of the existence of their respective insurance policies.
 

 In April 1984, the White Water Tavern was heavily damaged by fire. The Garrisons collected on their insurance policy. Ultimately, the Bank also collected about $49,000 on its policy with Great Southwest and applied that amount to reduce the mortgage indebtedness of the Garrisons. The Bank gave Great Southwest a partial assignment of the foreclosure judgment against the Garrisons, in the amount of $49,000. The Bankruptcy Court ultimately recognized Great Southwest’s claim against the estate in the amount of $49,000 plus interest.
 

 A mortgagor and a mortgagee may both insure their respective interests in mortgaged premises. But when the insurer pays the mortgagee for its loss, the insurer becomes subrogated to the rights of the mortgagee to the extent that the insurer has paid the debt, and this is generally true whether or not the mortgagee makes a separate, formal assignment to the insurance company. Payment of the debt or a portion of it by the insurer does not discharge the mortgagor from his obligation; it merely substitutes the insurer for the mortgagee to the extent of the insurance proceeds. See
 
 Twin City Fire Insurance Co. v. Walter B. Hannah Insurance, Inc.,
 
 444 S.W.2d 131, 135 (Ky.1969). This is the rule in Arkansas, see
 
 Hill v. Massachusetts Fire & Marine Insurance Co.,
 
 195 Ark. 602, 605-06, 113 S.W.2d 104, 106 (1938). The Garrisons object to the partial assignment in this case on the ground that they did not consent to it. As a general proposition, partial assignments, whether they be of contracts, mortgages, or judgments, are not enforceable against the obligor without his consent or ratification. The major rationale for this rule is that if a judgment creditor were to assign portions of the judgment piecemeal to a number of assignees, the debtor would be subject to repetitive and vexatious collection actions on what was initially a sin
 
 *502
 
 gle obligation.
 
 Richard’s Paint Manufacturing Co.,
 
 394 So.2d 1064, 1066 (Fla.App.1981). Other considerations underlying the rule are the danger that a debtor who has satisfied his original obligation without knowledge of the assignment might be forced to pay twice, and the danger that an undisclosed partial assignment might adversely affect a third-party purchaser of the property.
 
 Gilroy v. Lowe,
 
 626 P.2d 469, 472-73 (Utah 1981). None of those reasons applies here. The debtors are in bankruptcy and cannot be subjected to vexatious collection actions; there is no danger of the Garrisons’ being compelled to pay twice, since they paid no part of the Bank’s judgment prior to its assignment, and they are now fully aware of the assignment; and there are no third-party purchasers in sight. Moreover, we have here a sort of involuntary assignment, occurring by operation of law, or at any rate by virtue of the insurance contract, as a necessary consequence of the fire and the insurer’s payment to the insured. The situation presents no danger of a creditor’s making piecemeal assignments in order to harass or oppress a debtor.
 

 In addition, a rule of law that would void the assignment in the circumstances of this case would make little sense, even from the Garrisons’ standpoint. If the assignment is invalid, presumably the bank still owns its entire claim. There is no suggestion that the Garrisons do not owe it. The bank could assert the claim against the debtors’ estate; then, to the extent of any money collected by the bank, up to the amount of the policy proceeds, the bank’s insurance company would be entitled to reimbursement. Otherwise, the bank would be unjustly enriched at the expense of the insurance company. Thus, the money would end up in the same place — with the insurance company, where it belongs — but only after two lawsuits, instead of one.
 

 The judgment of the District Court is affirmed.
 

 [1]
 

 . The Hon. William R. Overton, United States District Judge for the Eastern District of Arkansas.
 

 [2]
 

 . The Hon. Robert F. Fussell, Chief United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.